IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| COGNIPOWER LLC,<br><br>      Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>      Defendants. | Civil Action No. 2:23-cv-00160-JRG<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' MOTION FOR RECONSIDERATION OF
THE COURT'S CLAIM CONSTRUCTION ORDER (DKT. 194, 313)
ON THE "DEMAND PULSE GENERATOR" TERMS**

Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively "Samsung") respectfully move the Court for reconsideration of the Court's Claim Construction Order (Dkt. 313), involving the "demand pulse generator" terms given recent events in *ex parte* reexaminations ("EPRs") of the Asserted Patents, including an office action from early this month (Ex. 2) and recent inventor deposition testimony that confirm "demand pulse generator" and the related terms are indefinite.

Since the claim construction proceedings, the patent examiners in EPRs of the Asserted Patents have identified various different structures as corresponding to the "demand pulse generator" and "second circuitry" terms, and the structures they identify differ from the structures identified: (1) in the Court's Claim Construction Order, (2) during prosecution of the reissued patents, and (3) by CogniPower's ("CP") claim construction expert. Moreover, in a recent deposition, one of the named inventors on the Asserted Patents could not identify the components of a "demand pulse generator" with reasonable certainty and testified that the scope of the term is

1

a ▮▮▮▮▮▮▮▮▮▮ This new evidence, which was not previously available to the parties or the Court during claim construction, meets the standard for a motion for reconsideration and further demonstrates that the "demand pulse generator" and related terms are indefinite.

## I. BACKGROUND

In the claim construction proceedings, Samsung argued that "demand pulse generator" and related terms—namely, "second circuitry," "second-side circuitry," and "second pulse source circuitry," (the "Second Circuitry terms"); and "generating demand pulses" (collectively, "related DPG terms")—are indefinite, including because the "specification, testimony of CP's expert, and inventor statements show by clear and convincing evidence that 'demand pulse generator' does not have any sufficiently clear scope or meaning" and the related DPG terms necessarily require a "demand pulse generator." (Dkt. 141 at 14-20; *see also, e.g.*, Dkt. 219 at 4-6.) This results in the indefiniteness of all asserted claims. (Dkt. 141 at 1.)

In his report and recommendation, Magistrate Judge Payne did not make a finding of indefiniteness, but instead found that "demand pulse generator" is subject to 35 U.S.C. § 112, ¶ 6. (Dkt. 194 at 12-20; Dkt. 313.) Magistrate Judge Payne found that "any of the following groups of elements," in addition to equivalents, are associated with the functions of "demand pulse generator" (Dkt. 194 at 19.):

- comparator 401a, switch 502a, and pulse generator 503a;

- comparator 401b and blocking oscillator 503b;

- comparator 401c, oscillator 505c, AND gate 506c, pulse generator 503c, and switch 502c; or

- comparator 401d, oscillator 505d, flip-flop 412d, and NAND gate 509d.

Magistrate Judge Payne also found that the related DPG terms should be given their plain and ordinary meaning. Samsung filed objections, and the Court overruled Samsung's objections and

adopted Magistrate Judge Payne's Claim Construction Order. (Dkt. 313.)

Since the Court's Claim Construction Order, new evidence in the EPRs and from the deposition of named inventor William Morong further demonstrate why the claims are indefinite and why the specification does not clearly link adequate corresponding structure to the function of a "demand pulse generator" or the related DPG terms.[1] Samsung therefore seeks reconsideration of the indefiniteness ruling for these terms.

### A. The Examiners in the EPRs Identified Structure that Is Different than the Structure Identified in the Court's Claim Construction Order

Between June 13, 2024 and August 5, 2024, third party Power Integrations, Inc. filed EPR requests for each of the Asserted Patents. The Patent Office ordered reexamination of each of the Asserted Patents. During reexamination of the Asserted Patents, the examiners determined that "demand pulse generator" and the Second Circuitry terms are subject to 35 U.S.C. § 112, ¶ 6, but the examiners identified structure for the functions of these terms that both differ amongst each other and also differed from the corresponding structure identified by the Court.

For example, while the Court identified elements 401a, 502a, and 503a of Figure 1 of the Asserted Patents as corresponding structure for the "demand pulse generator," examiners in two different EPR proceedings reached two different conclusions, both of which differ from the findings in the Court's Claim Construction Order. In particular, in the EPR for the '157 Patent, while the Court identified elements 401a, 502a, and 503a of Figure 1 of the Asserted Patents as corresponding structure for the "demand pulse generator" limitation, the EPR examiner determined that Figure 1 does not provide support for the "demand pulse generator" limitation.

---

[1] Samsung has included Demonstrative Exhibit 1 to this motion, which shows the differences between the Court's identification of corresponding structure in each of Figures 1-4 of the Asserted Patents as compared to the structures identified by the specification, inventor Lawson's declarations, and CP's claim construction expert, as well as the structures recently identified by the examiner in the '157 Patent EPR, the examiner in the '425 Patent EPR, and inventor Morong.

3

(Ex. 1 at 42-43.) By contrast, the examiner in the EPR for the '425 Patent reached yet a different conclusion, finding that only elements 502a and 503a (as opposed to 401a, 502a, and 503a) of Figure 1 are corresponding structure for a "demand pulse generator." (Ex. 2 at 20.) In addition, in the EPR for the '714 Patent, the examiner reached yet another conclusion with respect to the related "secondary side circuitry" term, finding that elements 400a, 401a, 502a, and 503a of Figure 1 are the corresponding structure. (Ex. 3 at 19.)

As another example, while the Court identified elements 401b and 503b of Figure 2 of the Asserted Patents as corresponding structure for "demand pulse generator," the examiner in the EPR for the '425 Patent identified just 503b as the corresponding structure. (Ex. 2 at 21.) For the related "second pulse source circuitry" term, the '425 Patent EPR examiner determined that Figure 2 has "insufficient disclosure of an embodiment to satisfy a corresponding structure." (*Id.* at 51.)

Still more discrepancies exist in the examiners' findings with respect to Figure 3. For example, while the Court identified elements 401c, 505c, 506c, 503c, and 502c as corresponding structure for "demand pulse generator," the examiner in the EPR for the '157 Patent determined that Figure 3 does not provide corresponding structure for "demand pulse generator," (Ex. 1 at 42-43), and the examiner in the EPR for the '425 Patent determined that just elements 502c and 503c are corresponding structure for a "demand pulse generator." (Ex. 2 at 21.) The examiner in the EPR for the '714 Patent then determined that for "secondary circuitry" there is yet a different set of corresponding structures—namely, 400c, 401c, 502c-503c, 505c, 506c. (Ex. 3 at 19.)

Finally, with respect to Figure 4, the examiners in each of the EPRs again identified different structure than the Court as corresponding to a "demand pulse generator." For example, while the Court identified elements 401d, 505d, 412d, and 509d, in the '714 and '157 Patent EPRs, the examiners additionally identified 400d, 408d-420d, 507d, and 508d as corresponding structure.

4

(Ex. 3 at 19; Ex. 1 at 44.) And then in the '425 Patent EPR, the examiner identified 507d-509d as additional corresponding structure for "demand pulse generator" (Ex. 2 at 21), but did not identify 401d, 505d, or 412d, which the Court did identify.[2]

### B. Inventor Morong Testified that the Identification of a "demand pulse generator" is ▮▮▮▮▮▮▮▮▮▮."

There is also new evidence of indefiniteness from the deposition of named inventor William Morong. In his deposition, Mr. Morong could not identify the specific elements that constitute the "demand pulse generator" or demand pulse generation "circuitry" with reasonable particularity. (Ex. 4 at 76:16-118:11.) For example, Mr. Morong testified that for Figure 1, the



"▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (*Id.* at 80:3-10.) Mr. Morong testified that the demand pulse generation circuitry also includes "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*Id.* at 80:12-19.) But when asked to confirm that these were all the components of a "demand pulse generator" in Figure 1, Mr. Morong testified that it is "▮▮▮▮▮▮▮▮." (*Id.* at 90:8-11.) Mr. Morong further testified that the demand pulse generator "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*Id.* at 117:6-15.) Mr. Morong testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*Id.* at 117:17-22.)

When asked to identify the elements of a demand pulse generator in Figure 2, Mr. Morong testified that it "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] Samsung also notes that despite the Court having found that "demand pulse generator" is subject to 35 U.S.C. § 112, ¶ 6 and examiners in the EPRs finding that "demand pulse generator" and Second Circuitry terms are subject to 35 U.S.C. § 112, ¶ 6, CP maintains in the EPRs that none of the terms are subject to 35 U.S.C. § 112, ¶ 6. This further demonstrates the lack of adequate clarity involving these terms.

5

████████" (*Id.* at 88:21-89:10.) Regarding Figure 3, Mr. Morong testified that components 503c, 506c, and 505c "████████," but that the demand pulses are outputted "████████." (*Id.* at 94:5-18.) Mr. Morong testified that it "████████" (*Id.* at 94:20-24.)

When asked to list the components of the demand pulse generator of Figure 4, Mr. Morong testified that "████████" (*Id.* at 98:24-99:2.) Mr. Morong further stated multiple times that it is "████████" what constitutes the elements of a demand pulse generator in Figure 4. (*Id.* at 98:17-99:2, 100:3-8, 105:16-106:1.) Mr. Morong continued that "████████" (*Id.* at 101:10-20.) Mr. Morong testified that "████████." (*Id.* at 108:1-7.)

## II.  ARGUMENT

"Courts in this district consider interlocutory reconsideration motions under the standard of Federal Rule of Civil Procedure 59(e)." *Joseph v. Hood*, 2020 WL 10045967, at *1 (E.D. Tex. Aug. 12, 2020); *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). "Grounds for

granting a reconsideration motion under Rule 59(e) include: '(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice.'" *Joseph*, 2020 WL 10045967, at *1 (quoting *Benjamin Moore & Co.*, 318 F.3d at 629).

In this case, the recent findings by examiners in EPRs of the Asserted Patents and testimony by a named inventor regarding "demand pulse generator" and related terms qualify as new evidence not previously available. Specifically, while examiners in the EPRs determined that the "demand pulse generator" terms are subject to 35 U.S.C. § 112, ¶ 6, the structure they identified as the corresponding is different from the structure identified by the Court, and also different than the structure identified in the specification and file histories of the Asserted Patents. In addition, inventor Morong testified that it is a "███████████████████████████████████████████████████████████████████████████████████████████████████████████" This new evidence further shows that the claims, specification, and file histories of the Asserted Patents do not provide a POSA with reasonable certainty as to the scope and meaning of these terms and do not clearly link adequate structure for performing the claimed function of the "demand pulse generator" and related DPG terms.

As discussed in Samsung's claim construction briefing, "demand pulse generator" and the related DPG terms are indefinite because the "claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention," *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014), including, namely, what circuitry or components do or do not qualify as a "demand pulse generator." (Dkt. 141 at 13.) Rather, the specification identifies black box elements in Figures 1-4 as the "demand pulse generator," which is not sufficient. The lack of clarity as to the

7

scope and meaning of "demand pulse generator" and related DPG terms is further compounded by the fact that "demand pulse generator" is a phrase that was coined by the inventors of the Asserted Patents, "raising the question of 'whether the intrinsic evidence provides objective boundaries to the scope of the term.'" *IQASR LLC v. Wendt Corp.*, 825 F. App'x 900, 904 (Fed. Cir. Sept. 15, 2020) (quoting *Iridescent Nets., Inc. v. AT&T Mobility*, 933 F.3d 1345, 1353 (Fed. Cir. 2019)).

The lack of clarity regarding the claimed "demand pulse generator" is further highlighted by the EPRs. As explained above, while two different examiners determined that "demand pulse generator" is means plus function, when they reviewed the specification and prosecution history, they reached two different conclusions as to the corresponding structure for the "demand pulse generator," both of which differ from the structure identified by the Court. These differing conclusions reached by skilled examiners is further evidence—on top of the disparate sets of identified components in the specification, the file history, and inventor testimony—that the specification does not clearly link adequate corresponding structure to the function of "demand pulse generator," and that the Asserted Claims are indefinite.

Indeed, to "meet the definiteness requirement, structure disclosed in the specification must be clearly linked to and capable of performing the function claimed by the means-plus-function limitation." *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc. (d/b/a The Home Depot)*, 412 F.3d 1291, 1299 (Fed. Cir. 2005). "The duty of a patentee to clearly link or associate structure with the claimed function is the quid pro quo for allowing the patentee to express the claim in terms of function under section 112, paragraph 6." *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1367 (Fed. Cir. 2012). Indeed, the different identifications of potential corresponding structure by the Court and the examiners in the EPRs show that there is no clear linking between structure set forth in the specification and the claimed function of

"demand pulse generator" or related DPG terms.

This is summarized in Samsung's Demonstrative Exhibit 1, which, for each of Figures 1-4 of the Asserted Patents, compares the structure identified by the Court for "demand pulse generator" with the different structures identified by the specification, inventor Lawson's declarations in the file history, and CP's claim construction expert. It also identifies the structures recently identified by the examiners in the two different EPRs and the recent testimony of inventor Morong. The fact that these skilled persons all reached different and inconsistent conclusions is powerful evidence that a POSA would not have reasonable certainty as to what circuitry or components do or do not qualify as a "demand pulse generator" in the Asserted Patents and that "demand pulse generator" is indefinite.

In addition, inventor Morong's testimony further demonstrates a lack of reasonable certainty. For example, as explained above, Mr. Morong testified that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*Id.* at 108:1-7 (emphasis added).) This is a classic example of an indefinite term. *See Mirror Worlds, LLC v. Apple, Inc.*, 742 F. Supp. 2d 875, 882 (E.D. Tex. 2010) (patentee's "inability to reference specific portions of the specification in support of a construction demonstrates that there are no clearly linked structures disclosed for the means-plus-function limitations").

Further, the various identifications of the corresponding structure of a "demand pulse generator" all do not include the capacitor 501a (in Figure 1), which inventor Morong testified is "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (Ex. 4 at 117:6-15.) As explained in

9

Samsung's objections to Magistrate Judge Payne's Claim Construction Order, capacitor 501a sources the "pulse of energy" that is the "demand pulse," and is necessary to perform the claimed function. (Dkt. 219 at 4-5.) "A means-plus-function claim is indefinite if the specification fails to disclose adequate corresponding structure to perform the claimed function." *Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1134 (Fed. Cir. 2021). Accordingly, the failure by the Asserted Patents to clearly link the capacitor as corresponding structure for the claimed function further shows that "demand pulse generator" is indefinite.

The related DPG terms are also indefinite for these same reasons. As Samsung explained in the claim construction proceedings, the Second Circuitry terms and phrase "generating demand pulses" necessarily require a "demand pulse generator," (Dkt. 141 at 19-21, Dkt. 219 at 5-6) and are indefinite for at least the same reasons as "demand pulse generator." *See*, *e.g.*, *Capital Sec. Sys., Inc. v. NCR Corp.*, 725 F. App'x 952, 958-59 (Fed. Cir. Mar. 7, 2018) (finding "transactional operator" indefinite where the intrinsic evidence was unclear as to its elements). As with "demand pulse generator," the examiners in the EPRs found that the Second Circuitry terms are subject to 35 U.S.C. § 112, ¶ 6, and identified inconsistent elements as corresponding structure for the Second Circuitry terms, as explained above. Accordingly, for these reasons, the related DPG terms lack a clear linking of corresponding structure and are indefinite. *E.g.*, *XR Comm'ns, LLC v. ARRIS Sols., Inc.*, 2023 WL 3529830, at *3 (Fed. Cir. May 18, 2023) ("If the specification fails to disclose adequate corresponding structure to perform the claimed function, the claim is indefinite.").

### III.     CONCLUSION

Samsung respectfully requests that the Court reconsider its construction of "demand pulse generator," "second circuitry," "second-side circuitry," "second pulse source circuitry," and "generating demand pulses." In view of the new evidence in the EPRs and the deposition of named inventor Morong and the evidence and arguments previously raised by Samsung (Dkt. 141; Dkt.

179; Dkt. 219), Samsung submits that these terms are indefinite, and Samsung requests judgment that all Asserted Claims are invalid as indefinite.

Dated: May 23, 2025

Respectfully Submitted,

*/s/ Melissa R. Smith* _____
Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

FAEGRE DRINKER BIDDLE & REATH LLP

David J.F. Gross – Lead Attorney (admitted *pro hac vice*)
david.gross@faegredrinker.com
4800 North Scottsdale Road, Suite 2200
Scottsdale, AZ 85251
Telephone: 1 (480) 643-1850

Christopher J. Burrell (admitted *pro hac vice*)
chris.burrell@faegredrinker.com
1500 K Street, Suite 1100
Washington, D.C. 20005
Telephone: 1 (202) 842-8800
Facsimile: 1 (202) 842-8465

Timothy E. Grimsrud (admitted *pro hac vice*)
tim.grimsrud@faegredrinker.com
Chad Drown (admitted *pro hac vice*)
chad.drown@faegredrinker.com
Lauren J.F. Barta (admitted in E.D. Tex.)
lauren.barta@faegredrinker.com
Kelly J. Fermoyle (admitted *pro hac vice*)
kelly.fermoyle@faegredrinker.com
2200 Wells Fargo Center
90 South Seventh Street

11

        Minneapolis, MN 55402
        Telephone: 1 (612) 766-7000
        Facsimile: 1 (612) 766-1600

        Evan J. Kline-Wedeen (admitted *pro hac vice*)
        evan.kline-wedeen@faegredrinker.com
        320 S Canal St Suite 3300
        Chicago, IL 60606
        Telephone: 1 (312) 569-1000
        Facsimile: 1 (312) 569-3000

        Lucas J. Tomsich (admitted *pro hac vice*)
        lucas.tomsich@faegredrinker.com
        Four Embarcadero Center, 27th Floor
        San Francisco, CA 94111
        Telephone: 1 (415) 591-7500
        Facsimile: 1 (415) 591-7510

        ***Attorneys for Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.***



/s/ *Melissa R. Smith*
Melissa R. Smith

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

/s/ *Melissa R. Smith*
Melissa R. Smith

13