# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| COGNIPOWER LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD.;<br>SAMSUNG ELECTRONICS AMERICA,<br>INC.,<br><br>    Defendants. | Case No. 2:23-cv-160 – JRG<br><br>**JURY TRIAL DEMANDED** |

**JOINT STATUS REPORT REGARDING COGNIPOWER'S DELAWARE CASE**

Pursuant to the Court's Order (Dkt. 539 at 1), Plaintiff CogniPower LLC ("CogniPower") and defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Samsung") (collectively the "Parties") hereby submit a joint status report regarding the proceedings in *CogniPower LLC v. Fantasia Trading LLC et al.*, No. 1:19-cv-2293-JLH-SRF (D. Del.) ("Delaware Case" or "Anker Case"), involving Defendants Fantasia Trading, LLC d/b/a AnkerDirect and Anker Innovations Limited ("Anker") and Intervenor Power Integrations, Inc. ("PI"), to provide a recital of the outcome of that case, what impact or effect that outcome may have on this case, and the scope of the disputes that remain between the parties in light of such verdict. The parties also present their respective proposals regarding further proceedings in this case given the jury's verdict in the Delaware Case.

**I.     CogniPower Statement On Outcome Of Anker Case Trial Proceedings, Impact On Samsung Case, And Scope Of Disputes That Remain**

    **A.     Anker Case Trial and Verdict**

On August 8, 2025, the Delaware Court granted summary judgment that CogniPower may not rely on the doctrine of equivalents (DOE) to show infringement of the '031 and '713 Patents because it concluded DOE had not been sufficiently disclosed in CogniPower's original infringement contentions. The undersigned counsel, who did not take over the Anker Case until nearly four years after the case was filed, sought to correct this after appearing in the case. The request was denied, at the urging of PI. *As a result, DOE was not tried to the jury.*

In the Anker Case, Anker/PI's noninfringement contention as to all independent claims was based on limitations relating to the demand pulse and rectifier. In the Samsung Case, CogniPower has presented DOE theories as to elements that were disputed in the Anker Case. Samsung has not moved to strike or for summary judgment on these theories.

On August 8, 2025, the Delaware Court determined that CogniPower was not entitled to claim an invention date as to the '031 and '713 Patents earlier than its July 3, 2012 priority

1

application filing date because it concluded that an earlier invention date had not been disclosed in those same original infringement contentions. Current CogniPower counsel also sought to correct this. The request was denied, at the urging of PI. *As a result, CogniPower's earlier conception was not tried to the jury.*

In the Samsung Case, the operative infringement contentions contain an earlier conception date of March 2012. The sole invalidity defense presented in the Anker Case relied on "prior invention" under 35 U.S.C. § 102(g), by the "OmniSwitch," with an alleged conception date of May 2012.

The purpose of recounting the above proceedings in the Anker Case is not to re-litigate the Delaware Court's decisions. CogniPower respectfully disagrees with these procedural decisions and will seek relief on appeal. But these procedural rulings meant that the claims tried in the Delaware Court were fundamentally different from the claims in the Samsung Case.

On August 13, 2025, CogniPower granted an irrevocable covenant not to sue to PI and its customers as to products that contain the original InnoSwitch chip launched in November 2014 ("Original InnoSwitch") on the '031 and '713 Patents.

CogniPower tried the issue of whether accused Anker adapters with PI InnoSwitch3 chips *literally* infringed claims 2, 11, and 18 of the '031 Patent and claims 46, 59, and 61 of the '713 Patent. At trial, CogniPower's technical expert testified that, as related to the claims at issue, InnoSwitch3 and InnoSwitch4 operate in the identical manner. Anker raised two non-infringement defenses that applied to all claims: (1) its adapters do not have a demand pulse / demand pulse generator; (2) its adapters do not have a "rectifier."

In the claim constructions presented to the jury in the Anker Case, "demand pulse generator" was not construed and therefore the jury was instructed to give the term its plain and ordinary meaning. In contrast, this Court in the Samsung Case has construed "demand pulse

generator" as a means-plus-function term, with specific corresponding structures and functions, and their equivalents. Dkt. 194 at 30.

Anker/PI dropped all invalidity defenses based on 35 U.S.C. §§ 103 and 112 and limited its invalidity defense to anticipation under 35 U.S.C. § 102(g) based on the OmniSwitch prior art. Specifically, PI witnesses testified that they had invented a functional design in May 2012. Anker Case, Trial Tr. at 736:8-13 (Mr. Balakrishnan) ("Q. All right. So let's just talk about the right-hand piece with you. May 2012 functional OmniSwitch design. Do you see that? A. Yes. Q. Was there a functional OmniSwitch design in May of 2012? A. Yes, there was."). The jury was instructed that CogniPower's conception date for the '031 and '713 Patents was its priority application filing date of July 3, 2012. In contrast, before this Court, CogniPower's operative infringement contentions disclose a conception date of March 2012.

The Delaware Court allowed PI to present a counterclaim that no converter using the PI Original InnoSwitch, InnoSwitch3, or Innoswitch4 would infringe the asserted claims of the '031 and '713 Patents. This was permitted as to the Original InnoSwitch at PI's insistence even though CogniPower delivered an unconditional covenant not to sue. CogniPower noted that because of this covenant no jurisdiction existed over the question of the Original InnoSwitch. The Delaware Court disagreed.

On August 22, 2025, the jury returned a verdict (redacted Verdict attached as Ex. A), in which it made the following findings:

**On infringement:** The jury found: (a) Claims 2, 11, and 18 of the '031 Patent were not infringed; and (b) Claims 46, 59, and 61 of the '713 Patent were not infringed.

**On invalidity:** The jury found: (a) Claims 2, 11, and 18 of the '031 Patent were invalid in view of "OmniSwitch" and (b) Claims 46, 59, and 61 of the '713 Patent were invalid in view of "OmniSwitch."

3

**On damages:** The jury found: $0.00.

The jury also answered "No" as to the special interrogatories requested by Anker/PI:

a. Did CogniPower prove by a preponderance of the evidence that products that incorporate Power Integrations' InnoSwitch3 meet the "Demand Pulse" Limitation?

b. Did CogniPower prove by a preponderance of the evidence that products that incorporate Power Integrations' InnoSwitch3 meet the "Rectifier" Limitation?

c. Did CogniPower prove by a preponderance of the evidence that products that incorporate Power Integrations' Original InnoSwitch meet the "Rectifier" Limitation?

No definitions were provided to the jury in either the verdict form or the instructions for the capitalized terms, "Demand Pulse" Limitation or "Rectifier" Limitation.

### B. Impact / Effect of the Anker Case Trial Verdict

There are five patents at issue in the Samsung Case: the '031, '713, '714, '157, and '425 Patents. CogniPower is withdrawing all the asserted claims of the '031 and '713 Patents from this case. That removes over half of the asserted claims in the case, resulting in substantial narrowing.[1]

CogniPower respectfully submits that *no preclusion* applies at least as to all asserted claims of the '714, '157, and '425 Patents.

> The test for claim preclusion in the Fifth Circuit has four elements: (1) the parties in the later action are identical to, or in privity with, the parties in the earlier action; (2) the judgment in the earlier case was rendered by a court with proper jurisdiction; (3) there has been a final judgment on the merits; and (4) the earlier case and later case involve the same cause of action.

---

[1] Samsung suggests that withdrawal of the '031 and '713 Patents changes the hypothetical negotiation date and thus undermines the damages opinions presented in the Samsung Case. Not so. The damages report in the Samsung Case analyzes the impact of different hypothetical negotiation dates. Dell Report: "Should it be determined that separate hypothetical negotiations for the '713 Patent, '714 Patent, '157 Patent, and '425 Patent would have occurred at the time each of the respective patents issued to CogniPower in November 2019, August 2022, and/or February 2023, respectively, it is my opinion that the outcome of the hypothetical negotiation between the parties would remain unchanged due to the familial relationship of the patents, as well as the fact that the parties and relevant economic factors, including the technological and economic benefits, would be the same a hypothetical negotiation in September 2018."

*SimpleAir, Inc. v. Google LLC,* 884 F.3d 1160, 1165 (Fed. Circ. 2018). The Anker Case does not satisfy any of these elements. In this submission, CogniPower will focus solely on whether the same cause of action (or issue) was adjudicated, as this analysis is dispositive that preclusion does not exist. CogniPower is including this substantive analysis because Samsung is requesting below what amounts to an indefinite stay of the Samsung Case as a result of the Anker Case.

**Infringement**: "[W]here different patents are asserted in a first and second suit, a judgment in the first suit will trigger claim preclusion only if the scope of the asserted patent claims in the two suits is essentially the same." *Id.* at 1167. This element is not satisfied. Unlike the Anker Case, the Samsung Case presents theories of infringement under the doctrine of equivalents for the demand pulse and rectifier elements in CogniPower's operative infringement contentions and expert reports on the '714, '157, and '425 Patents. The demand pulse and rectifier elements were the basis for Anker's noninfringement defense as to all independent claims in the Anker Case. The presence of doctrine of equivalents means the coverage of the claims for the '714, '157, and '425 is *per se* not essentially the same as the '031 and '713 claims tried in the Anker Case. *See, e.g. Ethicon Endo-Surgery, Inc. v. US Surgical Corp.,* 149 F.3d 1309 (Fed. Cir. 1998) ("However, any analysis of infringement under the doctrine of equivalents *necessarily* deals with subject matter that is "beyond," "ignored" by, and not included in the literal scope of a claim"); *Brenner v. United States,* 773 F.2d 306, 308 (Fed. Cir. 1985) (describing doctrine of equivalents as "broadening" claims); *Thomas & Betts Corp. v. Litton Sys., Inc.,* 720 F.2d 1572, 1579 (Fed. Cir. 1983) (claims have a "broadened scope" under doctrine of equivalents). Samsung has not moved to strike or for summary judgment on the equivalents theories in this case.

There are differences in literal claim scope between the claims of the '031 and '713 Patents that were tried in the Anker Case on the one hand and the claims of the '714, '157, and '425 Patent to be tried in this case on the other, including but not limited to:

5

- The presence of the Court's means-plus-function construction of the demand pulse generator element in claim 18 of the '425 Patent, which encompasses equivalents. Samsung did not move for summary judgment on means-plus-function equivalents.

- The absence of any reference to demand pulse in claim 27 of the '425 Patent. (CogniPower elected dependent claim 28, which includes its independent claim 27. CogniPower proposes to either proceed only on independent claim 27 or request on the verdict form separate answers for claims 27 and 28.)

- The absence of any reference to rectifier in all asserted claims of the '157 Patent and claim 28 of the '425 Patent.

**Validity**:  In the Anker Case, the earliest invention date for the '031 and '713 Patents was July 3, 2012.  In the Samsung Case, CogniPower's operative infringement contentions assert an invention date of March 2012 for the '714, '157, and '425 Patents.  PI identified an invention date for the OmniSwitch of May 30, 2012 in the Anker Case.  In the Federal Circuit, two claims even within the same patent are patentably distinct if they have different invention dates.  *Indivior UK Ltd. v. Dr. Reddy's Lab'ys S.A.*, 18 F.4th 1323, 1330 (Fed. Cir. 2021) ("claims 1-5, 7, and 9-14 are anticipated by Myers" because they could not claim a priority date before Myers, but "since claim 8 is entitled to the '571 application's filing date, DRL failed to demonstrate that Myers anticipates claim 8").

Samsung relies on *Ohio Willow Wood Company v. Alps South, LLC* to argue for validity preclusion.  This case establishes exactly why there should be no preclusion from the Anker Case:

> Our precedent does not limit collateral estoppel to patent claims that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply.  If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies.

735 F.3d 1333, 1342 (Fed. Cir. 2013) (internal cites omitted).  There is no identity of issues.  The invalidity question in the Anker Case was whether OmniSwitch was invented before the July 3, 2012 priority date of '031 and '713 Patents.  In the Samsung Case, the validity question will turn on whether OmniSwitch was invented before the CogniPower conception date asserted in this case – March 2012.  The difference in invention date of the '031 and '713 Patents on the one hand, and the

6

invention date of the '714, '157, and '425 Patents on the other is material to the question of validity.

### C. As To Samsung's Request for Summary Judgment Briefing on Preclusion and Indefinite Trial Continuance

CogniPower is prepared to proceed on September 22, 2025 with its substantially narrowed case. Samsung wishes to file a motion for summary judgment on preclusion, does not wish to travel to Texas until its motion is resolved, and is seeking what is in effect an indefinite continuance. Having clarity on what will be tried is a valid desire. The solution to this is expedited briefing. CogniPower proposed that Samsung file its motion by August 27, 2025 and CogniPower file its response by September 3, 2025, with no further briefing. Before the start of the Anker Case trial, Samsung counsel emailed both Anker/PI and CogniPower counsel regarding access to the trial transcripts. Both sides agreed that Samsung could have access to all trial proceedings that were public. The entire trial was public. The same holds for all summary judgment rulings discussed above. Anker Case, D.I. 412 and 434 (attached as Exs. B and C, respectively). Moreover, Samsung has a common interest agreement with Anker/PI. Simply put, Samsung knows exactly what has happened in the Anker Case, and what the claims and issues were and were not in the Anker Case. Through this submission, Samsung knows exactly what is CogniPower's position.

## II. Samsung's Statement on Outcome of Delaware Trial, Impact on This Case, and Scope of Disputes that Remain

### A. The Delaware Trial and Jury Verdict

Samsung briefly responds to certain of CogniPower's indications regarding the Delaware trial and jury verdict. The jury's verdict is attached as Exhibit A.

Samsung agrees that the jury in Delaware found non-infringement of all claims asserted by CogniPower in the Delaware trial. The non-infringement defense presented for InnoSwitch3 involved the same "demand pulses" limitation that is present in *all* Asserted Claims in this case, and a "rectifier" limitation that is present in Asserted Claims for the '031,'713, and '714 Patents and

7

present in the '425 Patent in materially the same form. For original InnoSwitch, Anker/PI's non-infringement defense also involved the "rectifier" limitation.

Samsung agrees that doctrine-of-equivalents ("DOE") was not tried to the jury in Delaware, given that CogniPower waived it in Delaware and lost summary judgment on that issue. As discussed below, CogniPower's waiver of DOE in the Delaware Case in no way prevents or alters the application of issue preclusion in this matter.

As to invalidity, Samsung agrees that the jury invalidated all claims asserted by CogniPower in the Delaware trial. For preclusion purposes, the issue is invalidity, and, as discussed below, the scope of the issue preclusion that applies in this case depends on the scope of the claims invalidated in Delaware relative to the scope of the claims asserted in EDTX. CogniPower's further indications regarding potential differences in priority date or other issues involving invalidity are not pertinent to the question of how issue preclusion applies from the Delaware judgment to the Asserted Claims in this case. Moreover, Samsung notes that it has a pending summary judgment motion regarding CogniPower's priority date.

Regarding the "Demand Pulse" limitation and the "Recitifer" limitation, CogniPower omits the discussion of those limitations during trial and in closings.

### B. Asserted Patents and Claims in EDTX

Samsung notes certain items regarding the claims at issue in the EDTX matter.

CogniPower asserts five patents in this case, all of which are reissues of U.S. Patent No. 9,071,152 ("the '152 Patent"). The '152 Patent issued from U.S. Application No. 13/923,394 filed on June 21, 2013, and claims priority to provision application No. 61/667,473 filed on July 3, 2012 and provisional application No. 61/727,795 filed on November 19, 2012. The asserted patents and CogniPower's final election of asserted claims pursuant to Dkt. 123 are as follows:

8

| U.S. Patent No. | Title | Asserted Claims | Expiration Date |
|---|---|---|---|
| RE47,031 ("'031 patent") | Power Converter With Demand Pulse Isolation | 1, 10, 32, 51, 62 | Nov. 28, 2033 |
| RE47,713 ("'713 patent") | Power Converter With Demand Pulse Isolation | 19, 36, 41, 48 | Nov. 28, 2033 |
| RE47,714 ("'714 Patent") | Power Converter With Demand Pulse Isolation | 19 | Nov. 28, 2033 |
| RE49,157 ("'157 Patent") | Power Converter With Demand Pulse Isolation | 18, 21, 22, 24 | Nov. 28, 2033 |
| RE49,425 ("'425 Patent") | Power Converter With Demand Pulse Isolation | 18, 28 | Nov. 28, 2033 |

CogniPower also discusses a "demand pulse generator" limitation, but the relevant claim term for issue preclusion as to all Asserted Claims involving InnoSwitch3 is "demand pulses," not "demand pulse generator."

As to the '425 Patent, CogniPower elected claim 28, which depends from claim 27. Claim 27 includes a "diode" limitation, which as noted below is materially the same limitation for purposes of issue preclusion involving non-infringement under the "rectifier" limitation. Samsung opposes any attempt by CogniPower to alter its claims elections at this time in an attempt to elect claim 27 in place of claims 28.

### C. Impact/Effect of Delaware Verdict on this Case and Samsung's Expected Motion on Issue Preclusion and Proposed Briefing Schedule/Requested Continuance of Trial Date Pending Resolution of Issue Preclusion Items

The Court continued trial in this matter until after the trial in CogniPower's first-filed Delaware case in order for the Court and the parties to see "what impact or effect that outcome may have on this case." (Dkt. 539 at 1.) We now have the answer. It is a resounding rejection of the validity of CogniPower's patent claims and its infringement theories against products having the

9

same original InnoSwitch and InnoSwitch3 chips in Delaware that are accused in this case. "In a patent case, issue preclusion prevents a plaintiff who previously litigated (and lost) a claim that certain technology infringed its patent from taking 'another bite at the apple' by asserting later the same technology infringes the same patent." *Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-CV-120, 2015 WL 12696204, at *5 (E.D. Tex. May 12, 2015) (granting summary judgment). These basic preclusion principles apply with full force here.

Samsung submits that once final judgment is entered in the Delaware Case from the jury's verdict in Delaware, the judgment will bar, or at the very least dramatically narrow, CogniPower's claims in this case. Following entry of judgment in the Delaware Case, Samsung intends to promptly bring a motion for summary judgment on CogniPower's claims in this case based on issue preclusion. Under these circumstances, Samsung submits that the same considerations of fairness and judicial efficiency that cautioned in favor of previously continuing trial in this matter in view of the Delaware Case, even more strongly compel a brief, further continuance of trial in this matter so that the full import of the jury's verdict and its preclusive effect can now be briefed and decided. Samsung, thus, respectfully requests that the Court continue trial in this matter pending briefing on the preclusive effect and overall impact of the Delaware judgment on this matter.[2]

Given the importance of these matters and CogniPower's apparent disagreements involving them, Samsung proposes the following schedule for briefing the preclusion issues:

- 14-days after entry of judgment in Delaware (e.g., September 19 in the event of judgment entered on September 5): Samsung's Opening Brief on Issue Preclusion and Related Issues

---

[2] Alternatively, Samsung requests that this matter be stayed in full pending any post-trial or appellate challenges that CogniPower may bring from the Delaware judgment, which would allow the parties and this Court the benefit of a fully resolved final judgment before conducting issue preclusion briefing and related-proceedings.

10

(30 pages)

- 14-days after Samsung's Opening Brief:  CogniPower's Opposition Brief (30 pages)

- 7-days Later:  Samsung's Reply Brief (10 pages)

- 7-days Later:  CogniPower's Sur-Reply Brief (10 pages)

**Issue Preclusion Based on Expected Non-Infringement Judgment.**  Significantly, in terms of the impact on this case, the Delaware jury found that the same "demand pulses" limitation that is present in ***every*** Asserted Claim in this case is not present in products having InnoSwith3 chips.  (Ex. A at 5.)  Thus, this finding by itself resolves all issues of liability involving products having InnoSwitch under all five Asserted Patents, and substantially resolves the case.  Indeed, the Accused Products having InnoSwitch3 chips account for approximately ***95%*** of the liability in this case, which eliminates about $190 million out of CogniPower's approximately $200 million damages demand.  Moreover, with respect to the relatively small categories of remaining products, the jury also found that products having original InnoSwitch (as well as InnoSwitch3) do not meet the "rectifier" limitation, which is present in the asserted claims of the '031, '713, and '714 Patents and in materially the same form in the asserted claims of the '425 Patent.  The only patent that does not have the "rectifier" limitation or materially the same limitation—the '157 Patent—issued nearly three years after the '031 Patent, meaning all that would remain of CogniPower's damages demand involving products having original InnoSwitch would be about $1.2 million.

CogniPower is precluded from relitigating these non-infringement findings in this case. Under Federal Circuit law, the Delaware court's expected judgment entering the jury verdict is preclusive here as to all family member patents sharing the same limitations.  *E.g., Papst Licensing GMBH v. Samsung Electronics Co.*, 924 F. 3d 1243 (Fed. Cir. 2019) (applying issue preclusion across family member patents); *see also Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F. 3d 1377, 1380-82 (Fed. Cir. 2013) (infringement issue is the same despite different patent claims being asserted, where

11

products are materially identical and every claim asserted in second suit has same term that was basis for non-infringement in the first suit against a different defendant); *Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-CV-120, 2015 WL 12696219, at *3 (E.D. Tex. Sept. 29, 2015).  To the extent CogniPower argues that preclusion should not apply because CogniPower waived DOE in Delaware but argues it is available here, that too is not a basis for CogniPower to avoid the preclusive effect of the Delaware judgment.  *Wisconsin Alumni Rsch. Found. v. Apple Inc.*, 112 F.4th 1364, 1384 (Fed. Cir. 2024) (holding the "issue" for preclusion purposes is infringement and a prior finding of no literal infringement precludes a claim for infringement based both on no literal infringement *and* no doctrine of equivalents).

**Issue Preclusion Based on Expected Invalidity Judgment.**  Beyond products having original InnoSwitch accused of infringing the '157 patent, the only remaining accused products would be a relatively small number of products having certain Diodes, Silergy, and On-Bright chips.  However, Samsung believes that the jury's verdict will render invalid the Asserted Claims in this case, including in particular the '157 Patent claims.  In Delaware, in an apparent attempt to avoid invalidity, CogniPower asserted some of its most complex claims from the Asserted Patents.  For example, CogniPower asserted claim 59 of the '713 patent, which is approximately 1000 words.  This claim 59 includes the same or materially the same limitations as those present in the asserted claims of the '157 Patent.  Thus, under *Ohio Willow Wood Company v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) and similar cases, CogniPower's claims under the '157 Patent should also not go forward, once the expected Delaware judgment is entered.  Accordingly, between the jury's non-infringement findings and the invalidity findings, Samsung believes that issue preclusion will serve as a complete bar to CogniPower's claims in this case.

**Fairness Considerations Favor Application of Issue Preclusion Here.**  CogniPower also cannot argue any unfairness in the preclusive effect of the Delaware judgment.  The parties'

12

representative products stipulation in this case makes clear that all products having an original InnoSwitch rise-or-fall together and that all products having InnoSwitch3 rise-and-fall together:

> A representative product shall be representative of the represented group of products of which it is a part for purposes of infringement or non-infringement, such that proof of infringement of a representative product is proof of infringement of all units of products in the represented group (and only that represented group) having the relevant InnoSwitch chip and, conversely, *a failure of proof of infringement of a representative product results in noninfringement of all units of products in the represented group (and only that represented group) having the relevant InnoSwitch chip*.

(Dkt. 317 ¶ 2; *see also id.* at ¶¶ 3-4.)

Moreover, CogniPower made Samsung central to its Delaware trial. Based on an initial review of the Delaware trial transcripts, "Samsung" was mentioned over 200 times during the Delaware trial proceedings, whether before the jury or during argument to Judge Hall. Samsung is continuing to review the Delaware trial transcripts, but Samsung further notes the following examples of CogniPower contending to the jury that Samsung infringed based on its use of the same PI chips found non-infringing in the Delaware case (emphasis added):

> "This is PX-2550 which is a presentation that Power Integrations gave to its customers like Anker and *Samsung* pointing to the power of their *InnoSwitch3 chip, the chip that when use in converters infringing*, and you'll see they tout the exact technical benefits that we taught could be achieved with our patents."
> (Day 1 Tr. 159:23-160:13 (CogniPower Opening).)
>
> Q. And *did you present Samsung evidence that the designs that used InnoSwitch in their converters would infringe the patents -- your patents*?
> A. *Yes, we did.*
> (Day 1 Tr. at 271:24-272:10 (Lawson Direct).)
>
> Q. Professor Ricketts, what is your opinion on the importance of the technology that's claimed by the patents-in-suit?
> A. The technology that's claimed on the claims we went over, it provides high performance and simplicity, and that's just really hard to get. And that's the benefits I talked about derived out of that simplicity and that high performance.
> Q. Does *Samsung use this technology in its adapters*?
> A. *Yes, sir.*
> (Day 2 Tr. at 582:21-583:5 (Ricketts Redirect).)

13

Far from looking to keep the Delaware Case against PI and Anker separate from its EDTX action against Samsung, CogniPower affirmatively injected Samsung into the Delaware Case at nearly every turn, and issue preclusion bars CogniPower from going forward in this action.

**Impact of Jury Verdict on Pending Motions and Disputes in this Case.** As noted above, Samsung believes the Delaware verdict, once entered as a judgment, will be fully dispositive of this case. But in the event the Court were to find that certain aspects of the case could go forward, that would raise separate issues that would need to be briefed and/or addressed in the context of what opinions, claims, or arguments CogniPower may still be allowed to pursue. For example, based on the Delaware jury's findings, no InnoSwitch3 products can infringe any of the asserted patents or claims—making InnoSwitch3 a non-infringing alternative. CogniPower's damages theory, however, is predicated almost entirely on benefits relating to InnoSwitch3, and CogniPower's experts offer no opinion of any incremental value of accused Diodes, Silergy, or On-Bright chips over products having either original InnoSwitch or InnoSwitch3.

As a result, once InnoSwitch3 can no longer be credited as infringing, Mr. Dell's theory of damages is no longer viable (to the extend not otherwise struck or ruled against based on the existing motions). This is equally true of Dr. Reed-Arthurs' conjoint survey and her calculation of alleged benefits and Dr. Ricketts' benefits analysis. Moreover, in the event any patents remain, the hypothetical date of infringement will have shifted as well from September 4, 2018 ('031 Patent issue date) to, for example, August 2, 2022 ('157 Patent issue date). In other words, even partial resolution of CogniPower's claims on liability grounds may lead to judgment for Samsung based on CogniPower no longer having a viable damages theory, and will, in general, substantially impact the nature of any trial and the nature of the disputes between the parties.

As to the pending motions, once the Delaware judgment is given effect, Samsung anticipates that will also dispose of several pending motions, if not generally resolve the matter. For example,

Samsung's motion for summary judgment of non-infringement as to products having InnoSwitch3 (Dkt. 381) would be mooted based on a finding that issue preclusion bars liability as to Samsung products having InnoSwitch3.  Thus, depending on the Court's issue preclusion determinations, there would be substantial additional streamlining effects, particular if the Delaware judgment is found fully preclusive.  But, if not, as noted above, it is unclear what damages theory CogniPower would have to go forward with, and, to the extent any patents or asserted claims remained, Samsung's experts would need the opportunity to supplement reports in view of, for example, new NIAs stemming from the Delaware verdict and judgment and/or other narrowing effects and findings in Samsung's favor based on the Delaware verdict.

**Support for Samsung's Proposal as to the Proposed Briefing Schedule/Brief Continuance of Trial Pending Resolution of Issues Preclusion Matters.**  Given the importance of issue preclusion and the related issues in this matter, full briefing is necessary and appropriate (i.e., opening, response, reply, sur-reply), and it is critical for the parties to have the normal schedule for dispositive motion briefing.  Samsung was not a party to the Delaware proceedings and still has not had the benefit of the full trial record, which has yet to be filed with the Court or provided to Samsung by CogniPower or Anker/PI.  There is also not yet a final judgment entered in Delaware.[3]  There is no preclusion until that judgment is entered, and in order for the parties to fully and fairly address issue preclusion, it is critical for Samsung to have the benefit of the entered judgment and its language.

By contrast, CogniPower's proposal is unworkable and deprives Samsung of a full and fair opportunity to be heard.  It is not reasonable to suggest that Samsung should have no opportunity

---

[3] Based on Judge Hall's practice in recent trials for entry of judgment following trial, it seems reasonably likely that judgment will be entered in Delaware before the currently scheduled trial date in this matter (September 22, 2025).

15

to respond to CogniPower's opposition, or that Samsung should file its brief on theses important issues in just two days, prior to even having the judgment from the Delaware court and without the benefit of the full trial record from Delaware.

CogniPower's proposed timeframe is particularly unreasonable given that in the Delaware Case CogniPower just recently moved to extend its deadline to filed certain redacted pleadings until September 4, 2025. (DE Dkt. 472.) The pleadings CogniPower proposes to redact were filed between August 9, 2025 and August 15, 2025. Thus, in Delaware, CogniPower is seeking nearly four weeks to simply file redacted versions of certain of its briefs. Yet, CogniPower proposes that this Court force Samsung to brief a critically important, dispositive motion that is not yet ripe in just two days. That is not reasonable.[4]

Dated: August 25, 2025

Respectfully submitted,

/s/ Andrew Choung
Robert Christopher Bunt
(Texas Bar No. 00787165)
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson Suite 418
Tyler Texas 75702
903-531-3535
rcbunt@pbatyler.com

Jason G. Sheasby
(Admitted Pro Hac Vice)
Stephen M. Payne
(Admitted Pro Hac Vice)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
310-203-7096
jsheasby@irell.com
spayne@irell.com

---

[4] Samsung further notes the time for filing JMOL motions under Rule 50 is 28 days following entry of judgment. Here, by contrary, Samsung proposes to take only 14 days following entry of judgment. This further bolsters the reasonableness and necessity of the timeframes and briefing Samsung request.

Andrew Choung
(Admitted in E.D. Tex.)
Jennifer Hayes
(Admitted Pro Hac Vice)
NIXON PEABODY LLP
300 S. Grand Avenue, Suite 4100
Los Angeles, CA 90071
213-629-6000
achoung@nixonpeabody.com
jenhayes@nixonpeabody.com

*Attorneys for Plaintiff CogniPower LLC*

/s/ Christopher J. Burrell
Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

FAEGRE DRINKER BIDDLE & REATH LLP

David J.F. Gross – Lead Attorney (admitted *pro hac vice*)
david.gross@faegredrinker.com
4800 North Scottsdale Road, Suite 2200
Scottsdale, AZ 85251
Telephone: 1 (480) 643-1850

Christopher J. Burrell (admitted *pro hac vice*)
chris.burrell@faegredrinker.com
1500 K Street, Suite 1100
Washington, D.C. 20005
Telephone: 1 (202) 842-8800
Facsimile: 1 (202) 842-8465

Timothy E. Grimsrud (admitted *pro hac vice*)
tim.grimsrud@faegredrinker.com
Chad Drown (admitted *pro hac vice*)
chad.drown@faegredrinker.com

17

>Lauren J.F. Barta (admitted in E.D. Tex.)
>lauren.barta@faegredrinker.com
>Kelly J. Fermoyle (admitted *pro hac vice*)
>kelly.fermoyle@faegredrinker.com
>2200 Wells Fargo Center
>90 South Seventh Street
>Minneapolis, MN 55402
>Telephone: 1 (612) 766-7000
>Facsimile: 1 (612) 766-1600
>
>Evan J. Kline-Wedeen (admitted *pro hac vice*)
>evan.kline-wedeen@faegredrinker.com
>320 S Canal St Suite 3300
>Chicago, IL 60606
>Telephone: 1 (312) 569-1000
>Facsimile: 1 (312) 569-3000
>
>Lucas J. Tomsich (admitted *pro hac vice*)
>lucas.tomsich@faegredrinker.com
>Four Embarcadero Center, 27th Floor
>San Francisco, CA 94111
>Telephone: 1 (415) 591-7500
>Facsimile: 1 (415) 591-7510
>
>**Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.**

18

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served electronically on August 25, 2025 to all opposing counsel of record.

/s/ Andrew Choung